In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-1843

REYNA CRUZ,

*Plaintiff-Appellant,*

*v.*

COSTCO WHOLESALE CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-01535 — **Gabriel A. Fuentes**, *Magistrate Judge.*

ARGUED DECEMBER 6, 2024 — DECIDED APRIL 21, 2025

Before HAMILTON, SCUDDER, and LEE, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Reyna Cruz slipped, fell, and was injured while shopping in a Costco food court. She filed this lawsuit alleging that Costco employees negligently failed to clean up a smoothie spilled on the food court floor. The district court concluded that the undisputed facts showed that Costco did not have constructive notice of the spill, so a reasonable jury could not find that Costco breached a duty to

Cruz. The court granted summary judgment to Costco on Cruz's negligence claim.[1]

On our de novo review, however, we conclude that evidence in the record creates genuine issues of material fact as to how long the smoothie had been on the floor—and, as a result, as to whether Costco, exercising ordinary care, should have known of the spill. We reverse and remand for further proceedings.

I.   *Facts for Summary Judgment*

Reyna Cruz fell on the floor of the Costco food court. She injured her neck, back, knee, and wrist, and ultimately ended up having back surgery.

Costco's surveillance camera system filmed and recorded the area of the fall. The recording in the record began at approximately 12:45 pm on July 28, 2021, and ended at 1:45 pm on the same day. Cruz's fall occurred at roughly 1:13. For the preceding 28 minutes, the video shows customers walking across the food court and up to the counter in roughly the area where Cruz would later fall. The video does not show a smoothie spill, nor any customer purchasing a smoothie from the food court counter.

The only event of note before Cruz's fall occurred at roughly 1:09, when a woman pushing her daughter in a shopping cart moved into roughly (although not exactly) the area where Cruz would fall. At 1:10, the woman bent over to pick up a red item that either she or her daughter might have

---

[1] The parties consented to have Magistrate Judge Gabriel A. Fuentes conduct all proceedings in this case, including entering final judgment. See 28 U.S.C. § 636(c).

dropped on the floor. It is difficult to discern what the item was or whether it fell in the same location where Cruz fell. Deposition testimony from several Costco employees reflects similar uncertainty about whether this event could have been the source of the liquid on the floor.

At 1:13 pm, Cruz fell. Her left leg slipped out from underneath her, and she landed awkwardly on her right knee and back. Several customers immediately came to help her. Costco employees arrived on the scene roughly 30 seconds later. The two employees who first came to Cruz's aid—along with Costco's front-end manager, John Shapiama—later testified that they did not remember seeing anything on the floor. As several Costco employees helped Cruz into a chair, two other employees wiped the floor around where she slipped, one using a cloth and one using a mop. Neither employee remembered later what they were cleaning. After they finished cleaning, they put up a "wet floor" sign.

Manager Shapiama later filled out an incident report. On the first page, he wrote that Cruz "fell by food court registers, on smoothie that was dropped by another member." Shapiama also selected "yes" for whether there was a "foreign substance or liquid on the floor" and noted that the "product involved" was a "fruit smoothie." Under "physical condition of floor," Shapiama wrote: "Smoothie drops about five on floor." Shapiama testified that he spoke to the first two Costco employees on the scene before filling out the report, and that he probably got the "smoothie drops" information from one of them. Cruz herself later testified that after she fell, she saw a pink substance on the floor, her shoe, and her pant leg.

Cruz filed this lawsuit in state court, and Costco removed the case to federal court under 28 U.S.C. § 1441(b).[2] After most discovery was completed, Costco filed a motion for summary judgment, which the district court granted. The court concluded that Cruz had not presented evidence that would allow a reasonable jury to find that any spilled portion of a smoothie was on the floor long enough for Costco to have had constructive notice of its presence. *Cruz v. Costco Wholesale Corp.*, No. 22-cv-1535, 2024 WL 1639817, at *2–3 (N.D. Ill. Apr. 16, 2024)**.** The court also concluded that Cruz did not present evidence that Costco maintained a policy that regularly led to dangerous conditions. *Id.* at *3–4.

II.  *Analysis*

We review de novo a district court's grant of summary judgment. *Washington v. City of Chicago*, 98 F.4th 860, 868 (7th Cir. 2024). We take a fresh look at the evidence and view it (along with all reasonable inferences) in the light most favorable to Cruz as the non-moving party. E.g., *McDaniel v. Syed*, 115 F.4th 805, 816 (7th Cir. 2024).

Illinois law governs in this diversity action. See *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008). When an Illinois plaintiff seeks recovery based on a defendant's alleged negligence, the plaintiff must "prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Heider v. DJG Pizza, Inc.*, 2019 IL App (1st) 181173, ¶ 29, 138

---

[2] Diversity of citizenship is complete. Cruz is a citizen of Illinois. Costco is incorporated in Washington and has its principal place of business there. The amount in controversy exceeds $75,000, particularly in light of Cruz's medical expenses.

N.E.3d 934, 939 (internal quotation marks omitted), quoting *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12, 21 N.E.3d 684, 688–89. A business "owes customers a duty to maintain its premises in a reasonably safe condition to avoid injuries to those customers." *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016).

The question on appeal is whether a reasonable jury could find that Costco breached that duty to Cruz. A business can be liable for injuries resulting from a foreign substance on the floor of a business if the customer establishes that "the proprietor had constructive notice of the substance." *Hayes v. Bailey*, 80 Ill. App. 3d 1027, 1030, 400 N.E.2d 544, 546 (1980). Constructive notice can be established in Illinois by two paths: "by presenting evidence that the dangerous condition was present for a sufficient length of time such that in the exercise of ordinary care its presence should have been discovered, or by showing that the dangerous condition was part of a pattern of conduct or a recurring incident." *Piotrowski*, 842 F.3d at 1040. Cruz argues there are genuine questions of material fact on both paths.

A. *Timing*

Drawing all reasonable inferences in favor of Cruz, a jury could find that a smoothie was on the floor long enough for Costco to have constructive notice of the spill. We address first the evidence indicating there actually was a spill on the floor and then how long the spill could have been there. See *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 2011 IL App (1st) 092860, ¶¶ 19–27, 953 N.E.2d 427, 432–33.

First, contrary to Costco's argument on appeal, Cruz presented evidence that there was, indeed, a smoothie spill on the floor. To recap, Costco's Shapiama filled out an incident report immediately following Cruz's fall indicating that there were "about five" drops of "fruit smoothie" on the floor. Also, the surveillance video shows customers and Costco employees pointing to the ground after Cruz slipped and fell. A reasonable jury could infer that the bystanders were gesturing to a spill on the floor. That theory is supported by the Costco employees' later actions, which included mopping and scrubbing the floor where Cruz fell and placing a "wet floor" sign in the area. These reactions help create a triable issue of fact as to whether Cruz slipped on smoothie droplets.

Cruz also testified in her deposition that after she fell she saw a pink substance on the floor, her shoe, and her pant leg. It is a reasonable inference that this "pink substance" could have been a fruit smoothie. See *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017) (on summary judgment, courts draw all reasonable inferences for non-moving party). In similar cases, Illinois courts have found that a plaintiff's own testimony about a dangerous substance on a business's floor can be enough to present a genuine issue of fact even if no other witnesses corroborate her testimony. E.g., *Newsom-Bogan*, 2011 IL App (1st) 092860, ¶ 19, 953 N.E.2d at 432; accord, *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (laying to rest "the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion"). Here, Cruz's statements do not even stand alone. They are part of a larger evidentiary mosaic that creates a triable issue of fact on whether there was a smoothie on the floor.

The next question is how long a jury could reasonably conclude the spill had been on the food court floor. That's central to whether Costco, exercising reasonable care, should have discovered the spill, and therefore whether it had constructive notice before Cruz fell and was injured. See, e.g., *Reid*, 545 F.3d at 481–82.

The district court concluded that Cruz could not establish constructive notice because "all [she] established is an absence of evidence." With respect, we view the evidence differently. Cruz offered evidence that there was a smoothie on the floor. She has also presented evidence—in the form of the surveillance video—indicating that no spill or cleanup occurred in the 28 minutes preceding her fall. A reasonable jury could therefore infer that the smoothie spill had been on the floor for longer than 28 minutes. Cf. *Heider*, 2019 IL App (1st) 181173, ¶ 8, 138 N.E.3d at 941 (reversing summary judgment for defendant; during relevant time window, plaintiff "did not see anything that could have caused water to get there, indicating that the dampness was there the whole time"); *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 124–25 (7th Cir. 1988) (collecting cases applying Illinois law; presence of substance and timing can be "established by circumstantial evidence").

The 28 minutes of video evidence make this case different from *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644 (7th Cir. 2014), which the district court cited for the premise that a plaintiff's "dearth of evidence establishing placement or notice of [a] puddle" requires a finding of no constructive notice. *Cruz*, 2024 WL 1639817, at *3, quoting *Zuppardi*, 770 F.3d at 651–52. In *Zuppardi*, the plaintiff testified that she "did not see anyone in the area prior to the fall despite having

walked" straight down a store aisle into the danger zone. 770 F.3d at 651. We affirmed summary judgment for the defendant in that case because the testimony established "only that the spill had occurred at least a few minutes before the accident, and there is no basis in the record for estimating how much earlier the spill might have taken place." *Id.* The key point was that the evidence in *Zuppardi* affirmatively established only that the spill could have been on the floor for only a few minutes (the time from when the dangerous area came into plaintiff's view until she arrived at the end of the aisle). See also *Hresil v. Sears, Roebuck & Co.*, 82 Ill. App. 3d 1000, 1002, 403 N.E.2d 678, 679–80 (1980) (affirming directed verdict for defendant when plaintiff observed dangerous area for just ten minutes before falling).

This case is also distinguishable from *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479 (7th Cir. 2008). In that case, we affirmed summary judgment for the defendant store because the store's manager had inspected the area roughly ten minutes before the fall and had not seen any spilled milkshake, establishing that the spill must have been on the floor for less than ten minutes. That evidence imposed an "outside limit" on the amount of time the spill could possibly have been on the floor. *Id.* at 482.

Here, the surveillance video, viewed in the light most favorable to Cruz, would allow a reasonable juror to find that the spill must have taken place at least 28 minutes before Cruz's fall—substantially more than the few minutes in *Zuppardi*, and without a low upper limit as in *Reid*.

The video is of course not conclusive proof for Cruz. A jury might ultimately find that there was never any smoothie on the floor at all or that a liquid came from the red item that

may have been dropped by the woman with a toddler just before Cruz's fall. But for purposes of summary judgment, Cruz has presented evidence indicating that (1) there was a smoothie spill on the floor, and (2) it could have been there for at least 28 minutes. This is enough to allow a reasonable jury to find constructive notice and thus to preclude summary judgment. Cf. *Hurt v. Wise*, 880 F.3d 831, 840 (7th Cir. 2018) (explaining that video evidence will warrant summary judgment only when the video is "flatly contradictory" of one side's view of the evidence), overruled on other grounds by *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019).

A reasonable jury could find further that Costco, in "the exercise of ordinary care," should have discovered the smoothie spill if it was there for 28 minutes—and that Costco therefore had constructive notice of the danger. See *Thompson v. Economy Super Marts, Inc.*, 221 Ill. App. 3d 263, 265, 581 N.E.2d 885, 888 (1991). Illinois courts have emphasized that "whether a defendant is deemed to have constructive notice of the existence of a dangerous condition on its property is a question of fact." See, e.g., *Heider*, 2019 IL App (1st) 181173, ¶ 34, 138 N.E.3d at 940; *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 229, 639 N.E.2d 974, 977 (1994). We have explained that Illinois law does not establish any conclusive, across-the-board rule as to how long a substance must be on the floor to allow an inference of constructive notice. *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001) (rejecting argument that there is any "flat rule in Illinois that ten minutes is always too short a period for a duty of inspection and clean up to arise").

Whether Costco should have discovered the spill using ordinary care will depend on facts to be determined at trial.

These may include how long the jury finds the spill to have been on the floor, along with other facts such as customer traffic, the probability of a slip and fall, the cost of patrolling, and whether Costco's inspection protocols were reasonable and properly executed. *Id.* at 604–05; see also *Zuppardi*, 770 F.3d at 652 (considering timing question and noting that business "was not experiencing heavy customer traffic at the pertinent time, which lessened the likelihood of a hazardous condition." (citing *Hresil*, 82 Ill. App. 3d at 1002, 403 N.E.2d at 680)). These are classic negligence factors suitable for jury consideration rather than rigid rules of law. See *Peterson*, 241 F.3d at 605 (lotion on floor for maximum of ten minutes created "a matter to be explored at trial"); *Newsom-Bogan*, 2011 IL App (1st) 092860, ¶ 19, 953 N.E.2d at 432 (store's written manual created "duty to inspect every [fifteen] minutes"; testimony indicating grease had been on floor for twenty minutes created triable issue of constructive notice); *Guidani v. Cumerlato*, 59 Ill. App. 2d 13, 24, 207 N.E.2d 1, 6 (1965) (collecting cases applying Illinois law and noting that just ten to fifteen minutes can create a jury question).

B. *Pattern of Dangerous Conditions*

The district court also rejected Cruz's theory that Costco had constructive notice of the smoothie because "it did not conduct frequent enough inspections of the food court." *Cruz*, 2024 WL 1639817, at *3, citing *Piotrowski*, 842 F.3d at 1040. The district court noted that while Cruz presented evidence on the frequency of spillage in the food court, she did not present any evidence that Costco's hourly floor walks were insufficient to monitor these spills or that other customers had been harmed by those spills. *Id.*

On this issue, we agree with the district court. Cruz urges that Costco's practices should establish constructive notice because several spills per week are found in the food court by customers, not by Costco employees. But the fact of spills in the food court, alone, does not establish constructive notice for two reasons. First, Cruz has not presented evidence indicating that Costco failed to clean up these spills promptly. Cf. *Culli*, 862 F.2d at 126–27 (finding constructive notice when defendant knew of regular spills in self-service gas pump area but consistently did not clean those up until evening). Second, and relatedly, Cruz has not offered evidence that Costco typically left these spills on the floor in a way that created "a pattern of dangerous conditions which were not attended to within a reasonable period of time." *Id.* at 126; see also *Zuppardi*, 770 F.3d at 652 (rejecting argument that Illinois law requires "continuous monitoring and patrolling of a store's safety conditions….").

All the cases that Cruz cites for the premise that a fact-finder may find constructive notice based on a pattern of dangerous conditions involved evidence regarding how effectively defendants resolved the issue. See, e.g., *Ruda v. Jewel Food Stores, Inc.*, 2024 IL App. (1st) 230582, ¶ 56, — N.E.3d — (reversing summary judgment when employees testified that preventive measures were not taken and there was a two-hour gap in sweep procedures); *Nicholson v. St. Anne Lanes, Inc.*, 136 Ill. App. 3d 664, 668–69, 483 N.E.2d 291, 295 (1985) (affirming denial of judgment as a matter of law when plaintiff presented evidence that bartender repeatedly saw soap on bathroom floor and did not "check and make sure that this soap was where it is supposed to be"); *Perminas v. Montgomery Ward & Co.*, 60 Ill. 2d 469, 474–75, 328 N.E.2d 290, 293–94 (1975) (reversing grant of summary judgment

when plaintiff presented evidence indicating employee knew items regularly fell on the ground and customers used them as skateboards but defendant did not change practices). Here, Cruz asserts only that other customers discovered spills—not that Costco employees failed to clean them up or that the spills were left untouched for hazardous amounts of time. In other words, it is not enough to assert a problem without also presenting evidence indicating that the store did not respond effectively to that problem. Cruz has not created a genuine issue of material fact on whether Costco maintained a pattern of dangerous conditions.

Nonetheless, because Cruz presented sufficient evidence to create a triable issue of fact on whether the smoothie was on the food court floor long enough for Costco to have constructive notice of its presence, she may proceed to trial on her negligence claim. See *Culli*, 862 F.2d at 123 (analyzing "sufficient amount of time" and "pattern of conduct" as separate theories of constructive notice).

The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.